Patty R. SMITH

v.

UNITED STATES of America.

Wilson N. and Mildred P. CHASTAIN

v.

UNITED STATES of America.

John H. and Bernice J. KAISER

v.

UNITED STATES of America.

Civ. A. Nos. 5753–5755.

United States District Court,
M. D. Tennessee,
Nashville Division.

Feb. 18, 1971.

H. Stennis Little, Jr., Nashville, Tenn., for all plaintiffs.

Charles H. Anderson, U. S. Atty., Nashville Tenn., Ames Davis, Asst. U. S. Atty., Nashville, Tenn., Lawrence R. Jones, Jr., Tax Div., Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM

MORTON, District Judge.

These actions were brought by the plaintiffs (Wilson N. Chastain and Bernice J. Kaiser are parties only as a result of their having filed joint income tax returns with their spouses) for the recovery of income taxes and statutory interest for the year 1965. Deficiency assessments were made by the Internal Revenue Service, the plaintiffs paid said assessments, filed claims for refund which were denied, and these suits resulted.

■ The question presented is whether or not the plaintiffs are entitled to long-term capital gain treatment under Section 402(a) (2) of the Internal Revenue Code of 1954, upon a lump sum distribution to them in 1965 of their share of an employees' profit-sharing plan.

Omitting certain non-pertinent historical data, the basic stipulated facts are that on April 3, 1964, and prior thereto, the plaintiffs were employees of Adkins Cargo Express, Inc., hereinafter called "Cargo." The plaintiffs as employees of Cargo were participants in a profit-sharing plan which qualified as a tax-exempt trust under the provisions of Sec. 165(a) of the Internal Revenue Code of 1939, and under Sec. 401(a) of the 1954 Code. In November, 1964, Gateway Transportation Company, Inc. of LaCrosse, Wisconsin, hereinafter called "Gateway," began negotiating for the purchase of the stock of Cargo. In February, 1965, Gateway took control of Cargo by electing officers and directors, and on June 30, 1965, Gateway purchased all the stock of Cargo.

On July 14, 1965, the Board of Directors of Cargo had a special meeting and passed a resolution to discontinue and terminate Cargo's profit-sharing plan. Although there is some question about the effective date of the termination of the plan, the Court finds that the plan was effectively terminated on July 14, 1965. At the time Gateway purchased Cargo's stock it was the intention of Gateway to merge Cargo into Gateway, with Gateway to be the surviving corporation.

On December 29, 1965, the First American National Bank of Nashville, as trustee of the profit-sharing plan, issued settlements in full distribution, settlement and satisfaction of all interest and claims in the profit-sharing plan, the plaintiffs receiving their distribution. On September 30, 1965, the employment of the plaintiff Kaiser was terminated. The employment of the other two plaintiffs was continued with Gateway after Cargo was merged into Gateway, and they still work for Gateway to this date.

Beginning by corporate resolution on September 14, 1967, and effected on July 17, 1968, Cargo was merged into Gateway and Cargo went out of existence. There were tax and business reasons which caused the delay of the merger of Cargo into Gateway until 1968.

When Gateway acquired the stock of Cargo in 1965, Cargo had an average total employment slightly in excess of 180, with approximately 60 to 65 of said employees being stationed in Nashville, Tennessee. After Gateway acquired the stock of Cargo in 1965, it terminated, in 1965, seven employees of Cargo in Nashville, which terminations were brought about by the moving of the principal accounting procedures from Nashville to LaCrosse, Wisconsin.

The corporate structure or corporate being of Cargo did not go out of existence until 1968. It continued as a viable operating business entity, with all of the stock thereof owned by Gateway.

It is conceded by the plaintiffs and the Government that the plaintiffs can receive capital gains treatment only in the event they fall within the provisions of Sec. 402(a) (2) as limited by Sec.

402(e) of the Internal Revenue Code, which two sections are as follows:

Internal Revenue Code of 1954 (26 U. S.C.):

"SEC. 402. TAXABILITY OF BENEFICIARY OF EMPLOYEES' TRUST.

"(a) *Taxability of beneficiary of exempt trust.—*

\*    \*    \*    \*    \*    \*

"(2) as amended by Sec. 4(c), Self-Employed Individuals Tax Retirement Act of 1962, P.L. 87–792, 76 Stat. 809. *Capital Gains Treatment for Certain Distributions.—*In the case of an employees' trust described in section 401(a), which is exempt from tax under section 501(a), if the total distributions payable with respect to any employee are paid to the distributee within 1 taxable year of the distributee on account of the employee's death or other separation from the service, or on account of the death of the employee after his separation from the service, the amount of such distribution, to the extent exceeding the amounts contributed by the employee (determined by applying section 72(f)), which employee contributions shall be reduced by any amounts theretofore distributed to him which were not includible in gross income, shall be considered a gain from the sale or exchange of a capital asset held for more than 6 months. Where such total distributions include securities of the employer corporation, there shall be excluded from such excess the net unrealized appreciation attributable to that part of the total distributions which consists of the securities of the employer corporation so distributed. The amount of such net unrealized appreciation and the resulting adjustments to basis of the securities of the employer corporation so distributed shall be determined in accordance with regula-

tions prescribed by the Secretary or his delegate. This paragraph shall not apply to distributions paid to any distributee to the extent such distributions are attributable to contributions made on behalf of the employee while he was an employee within the meaning of section 401(c)(1).

\*    \*    \*    \*    \*    \*

"(e) *Certain plan terminations.* —For purposes of subsection (a) (2), distributions made after December 31, 1953, and before January 1, 1955, as a result of the complete termination of a stock bonus, pension, or profit-sharing plan of an employer which is a corporation, if the termination of the plan is incident to the complete liquidation occurring before the date of enactment of this title, of the corporation, whether or not such liquidation is incident to a reorganization as defined in section 368(a), shall be considered to be distributions on account of separation from service."

It is contended by the plaintiffs that Revenue Rulings 58–94, 58–95, and 58–97, issued by the Internal Revenue Service as interpretations of the above-mentioned code sections, clearly show that the plaintiffs are entitled to capital gains treatment of the distributions received on the termination of the employees' profit-sharing plan.

The plaintiffs urged that the requirements of Sec. 402(a) are met by the facts of this case; to-wit:

(1) the distribution must be made from a qualified plan;

(2) the distribution must represent the "total distribution payable";

(3) the distribution must be made in one taxable year; and

(4) the distribution must be made on account of the employee's separation from the service of the employer.

The basic difference of opinion in this case is whether or not the payments

were made on account of "the employee's separation from the service" of his employer. The plaintiffs contend that the distribution was made by reason of the plaintiffs being separated from the service of their employer and the Government contends that the distribution was made by reason of the termination of the pension plan.

Before 1942, all payments from employees' trusts were subject to ordinary income tax rates, even though paid to a distributee in one taxable year. United States v. Johnson, 5 Cir., 331 F.2d 943.

By the passage of the Revenue Act of 1942 through an exception added by the Senate as an amendment to Sec. 165(b), capital gains treatment of lump sum payments from employees' trusts was introduced into the picture. Thus, if on account of the employee's "separation from the service" of his employer, the distributee receives lump sum payments, the amount received (less the employee's contributions) may be treated as long-term capital gains. United States v. Johnson, supra; Section 165 of the Internal Revenue Act. Thereafter, court decisions interpreted the language of Sec. 165, i. e., "separation from the service," to encompass a change in employment by reason of a merger of the employer with another corporation. The identity of the employer became a prime issue. Thus the case of Commissioner of Internal Revenue v. Mary Miller, 22 T.C. 293, affirmed per curiam, 6th Cir., 1955, 226 F.2d 618, established that the employees of a corporation were separated from the service of a corporation whose stock was acquired under a stock swap arrangement, the acquiring corporation liquidating the employer corporation thereafter. The employees thereof continued in the employment of the acquiring corporation.

Congress, however, was of a different philosophy, and thus Sec. 402(e) became their expression of the law.

To give the legislative history of this limitation, we quote extensively from the opinion of United States v. Johnson, supra.

"The House draft of Section 402 had liberalized the grant of capital-gain treatment by expanding it prospectively to distributions when plans are terminated 'as a result of the *complete termination of the business* of the employer.' This was defined to mean, 'in the case of an employer which is a corporation, the complete liquidation of such corporation whether or not such liquidation qualifies as a complete liquidation under Section 336 and *whether or not such liquidation is incident to a corporate acquisition of property, a statutory merger, or consolidation.*' The House intended this provision to allow capital-gain treatment to situations such as arise upon the merger of a company having a plan with another company not having a plan, resulting in termination of the plan. H.R. Rep.No.1337, 3 U.S.Code Cong. & Ad.News, 83rd Cong., 2d Sess.1954, 4285–4286. The Senate Committee on Finance, fearing that the exception would lead to abuse, in that small corporations could be dissolved and reincorporated every few years to withdraw funds in plans as *capital gains,* amended the House proposal by limiting the application of Section 402(a) (2) in two ways. First, by Section 402(e), the Senate version provided that distributions on termination of a plan incident to the complete liquidation of a corporate employer shall 'be considered to be distributions on account of separation from the service' of the employer—but *only if made* during 1954. Second, to qualify under Section 402(e), the termination of the plan must be incident to 'a complete liquidation' of the corporate employer, whether or not the liquidation is incident to a reorganization as defined in Section 368. For purposes of Section 402(e), the Senate Report defined 'complete liquidation' as the '*disappearance of the corporate entity* by

reason of the merger or consolidation of such corporation with another corporation.' S.Rep. No. 1622, 83rd Cong., 2nd Sess., p. 289; 3 U.S.C. Cong. & Adm.News, pp. 4621, 4928 (1954). The legislative history therefore shows a manifest congressional intent to distinguish between termination of the corporate entity of the employer as opposed to mere termination of the plan, which is not a separation from the service.

"The Finance Committee explained its reasons as follows:

" 'The House bill extends capital gains treatment to lump-sum distributions to employees at the termination of a plan because of a complete liquidation of the business of the employer, such as a statutory merger, *even though there is no separation from service.* This was intended to cover, for example, the situation arising when a firm with a pension plan merges with another firm without a plan, and in the merger the pension plan of the first corporation is terminated.

" 'Your committee's bill revises this provision of the House bill to eliminate the possibility that reorganizations *which do not involve a substantial change in the makeup of employees* might be arranged merely to take advantage of the capital gains provisions. Thus, your committee's bill would grant capital gains treatment to lump-sum distributions occurring in calendar year 1954 where the termination of the plan is due to corporate liquidation in a prior calendar year. The purpose of granting capital gains treatment to such distributions is to avoid hardship in the case of certain plans which it is understood were terminated on the basis of mistaken assumptions regard-

ing the application of the present law.' Sen.Rep. No. 1622, 83rd Cong., 2nd Sess., 54, 3 U.S.C.Cong. & Adm.News, pp. 4621, 4685 (1954). (Italics added.)

"The Senate amendment was accepted. The limited extension became Section 402(e) of the Internal Revenue Code of 1954. Conference Rep., H.R.Rep. No. 2543, 3 U.S.Code Cong. & Ad.News, 83rd Cong., 2d Sess., 1954, p. 5302."

■ From the above Congressional legislation, it appears that after 1954, distributions that are made as a result of the termination of a plan incident to a corporate reorganization will not qualify for capital gains treatment, even if the corporate employer is completely liquidated. United States v. Johnson, *supra*; United States v. Haggart, 410 F.2d 449 (C.A. 8, 1969).

■ The plaintiffs contend that the regulations hereinbefore mentioned, issued by the Commissioner after the Congressional enactment of 402(e), grant capital gains treatment. Assuming such were true, to the extent that these regulations conflict with the statute, they are a nullity. Manhattan General Equipment Co. v. Commissioner of Internal Revenue, 297 U.S. 128, 56 S.Ct. 397, 80 L.Ed. 528; United States v. Haggart, *supra*.

Thus it is the holding of this Court that the distributions to the plaintiffs did not qualify for capital gains treatment.

In addition to the above, there are two additional reasons which prevent the distributions from qualifying for capital gains treatment.

The first is the caveat set forth in the Senate Finance Committee report to the effect that the House bill was revised to

eliminate the possibility that reorganizations *which do not involve a substantial change in the make-up of employees* may be arranged merely to take advantage of the capital gains provisions. This Court holds that there was not a substantial change in the makeup of the employees.

The second reason is that the profit-sharing plan was terminated on July 14, 1965, and the employer Cargo did not go out of existence until July 17, 1968, or thereafter. The distribution under the plan was made by the trustee on December 29, 1965. Although it is stipulated that it was the intent, at the time of the acquisition of the stock of Cargo, that Gateway would at a subsequent date dissolve Cargo, it does not seem reasonable to assert that a "separation from employment" took place in 1965 based on a future contingent possible liquidation. It seems that reason would require the consideration of the possibility that minds of men can change based on business conditions or otherwise, and that a present intent to accomplish a liquidation in the future should not be the basis on which to give a taxpayer a favorable tax construction different from that given to other taxpayers of a like class, in situations where an employer's stock was acquired by another corporation and the acquiring corporation had no present intent to liquidate, but some three to five years later did liquidate the employer corporation.

The plaintiff Kaiser asserts that he occupies a different position from that of the other two plaintiffs since he was terminated as an employee of Cargo on September 30, 1965. The profit-sharing plan was discontinued on July 14, 1965. However, for the reasons expressed hereinbefore, the Court cannot see any basic difference in his situation and that of the other plaintiffs.

Therefore, the plaintiffs must fail in their effort to recover from the Government.